[ Philadelphia, January 13th, 1840. ]

RILEY *against* WILLIS and Another.

IN ERROR.

An inspector of bark who was in office at the time of the passage of the act of 15th April, 1835, remained in office until the 28th of March, 1836, when a successor was appointed. In November, 1835, a new commission was sent to him which he refused to accept. Between the passage of the act and the 28th of March, 1836, he inspected certain bark for the plaintiffs for which they paid him $1 50 per ton: *Held*, that he had no right to charge more than one dollar per ton, and that the plaintiffs might recover back the excess.

Error to the Court of Common Pleas of the County of Philadelphia.

Robert *Willis* and C. N. *Buck*, partners under the firm of Willis & Buck, brought an action before Alderman Badger, of the city of Philadelphia, against Joseph S. Riley, late inspector of ground black oak bark for the city and county of Philadelphia, to recover the sum of fifty cents per ton for certain tons of black oak bark inspected for them, and for which they paid him the sum of one dollar and fifty cents per ton; the said fifty cents per ton being the difference between the fees allowed by the law as it was before the passage of the act of the fifteenth of April, 1835, and the fee allowed by that act, which was one dollar per ton. Judgment having been

(Riley *v.* Willis.)

given by the alderman for the sum demanded, an appeal was taken to the September Term, 1836, of the Court of Common Pleas for Philadelphia county; where the following case was stated, to be considered in the nature of a special verdict.

"It is agreed that the following facts be considered as if found by a jury, in the nature of a special verdict; and if upon the same the Court shall be of opinion that the plaintiffs are entitled to recover, then judgment to be entered for the plaintiffs for the sum of thirty-one dollars forty-four cents and costs, as on the verdict of the jury. But if the Court should be of opinion that the plaintiffs are not entitled to recover, then judgment to be entered for the defendant as on the verdict of the jury: but in either case, without prejudice to the right of either party, to have a writ of error, viz.

That the above defendant, between the 25th day of September, 1835, and the 25th day of March, 1836, inspected for the plaintiffs a quantity of oak bark, say 61 tons, 7 cwt. 3 qrs. 23 lbs., for the inspection of which he demanded of, and was paid by the said plaintiffs, at the rate and rule of one dollar fifty cents per ton.

That the said defendant, on the 6th day of June, 1833, was duly appointed by the governor of this commonwealth, inspector of ground black oak bark in and for the city and county of Philadelphia: and after being duly qualified according to law immediately took upon himself the execution of the duties of said office and continued to discharge the same until some time after the 26th of March, 1836. That on the 6th day of November, A. D. 1835, a commission was issued appointing the said Riley inspector of bark, and was sent by the governor to the recorder of deeds, &c.; but the said Riley refused to accept the same; whereupon a successor in office to said Riley was duly appointed, and qualified on the 28th of March, 1836.

The said defendant never gave any bond or security, nor took any oath, nor did any act to qualify himself to act as inspector specially under the act of 15th April, 1835."

Judgment was entered in favour of the plaintiffs by the Court of Common Pleas on the 10th of June, 1837: on which judgment the writ of error in this case was sued out, and the following errors were assigned.

"1st. That the Court below erred in giving judgment for the plaintiff below on the case stated; the facts not being sufficient in law to warrant such judgment.

2nd. The said Court erred in giving judgment for the plaintiff below. Because by the inspection laws which existed, at, and immediately before, the passing of the act of 15th April, 1835, the defendant below was authorised to take one dollar and fifty cents per ton for the inspection of the bark in the said case mentioned,

(Riley *v.* Willis.)

and continued to be so authorised at the time the same was paid to him by the plaintiff below.

3rd. Because the act of the 15th April, 1835, did not repeal the act under which the defendant below held his commission; nor was the same repealed by any act until the 31st of March, 1836.

4th. Because by the terms of the said commission the said defendant was duly authorised to hold and exercise his said office of inspector until his commission and appointment should be superseded and annulled by some lawful authority.

5th. Because the act of the 15th of April, 1835, required the appointment of an inspector to execute the duties imposed thereby before it could go into operation; and none was appointed before the 28th of March, 1836.

6th. Because the provisions of the last act in respect to fees, duties, obligations and penalties, were intended to apply only to inspectors who should be appointed by the governor under that act.

7th. Because the fees paid were a reasonable and usual compensation for the services rendered by the defendant below, independently of the provision made by law; and having been voluntarily paid by the plaintiff below under as full a knowledge of the law as the defendant had, cannot now be recovered back in whole or in part."

Mr. *Broom,* for the plaintiff in error.

Two questions will embrace the exceptions.

1st. Whether the plaintiff in error was authorised to act as inspector under his commission of 1833, until the appointment of an inspector under the act of 1835; and to receive one dollar and fifty cents per ton for inspection.

2nd. Whether the fees voluntarily paid to him can be recovered back in any event.

1. The act of 1835 was not limited by its terms to take effect at any future period; but the legislature could not have intended it to take effect immediately, and thereby to repeal immediately the existing inspection laws, without intending to leave the state without any inspection laws, until the new law could be promulgated, the appointments made of officers to carry it into execution, and the qualifications of these officers by the action of the Courts of law; all of which would necessarily require much time. To guard against this evil, they provided that the several inspectors to execute the new law, should be appointed by the governor, from time to time, as occasion should require. Of this, the governor must judge; and as he is a co-ordinate branch of the government, nothing could be expected of him but to carry it into effect, after he had taken time to be informed of the fitness of applicants for office, and of the

requirements of public convenience. The act could not go into operation until inspectors were appointed. The great object of the law was to impose new restrictions on the inspectors to be appointed; and no inspection could be made without an inspector. The fifth section of general provisions, provides, that every inspector must take the oath prescribed before he can enter on the duties of his office. The sixth section, that he must previously give bond with security to be approved of by the Court of Quarter Sessions. The first section provides, that the several inspectors mentioned in the act should be thereafter appointed by the governor: and prescribes no new duties to those previously appointed. The plaintiff was therefore not an inspector under the act of 1835, nor by its terms made subject to its regulations. His commission was to continue in force until it should be *superseded and annulled.* This could have been done at any moment by the appointment of a successor; at which moment the new law would commence operation. Why this was not done before the 28th of March, 1836, must be referred to the governor. One law necessarily repeals another without express words of repeal, only when it introduces a different rule of action within the same jurisdiction; but this could not be until an inspector was appointed. An express repeal of the former inspection laws was not made until the 31st of March, 1836, when sufficient time had been allowed to the governor to put the new laws into full operation.

2d. If the plaintiff in error had not a right to demand or recover the fee of one dollar fifty cents per ton, or any fees as inspector, yet the payment being voluntary, the defendant in error has no right to recover them back. It was a reasonable compensation for the service, and was paid in ignorance of law, without deceit or unfair practice, both parties having equal means of knowledge. *Bilbie* v. *Lumley,* (2 *East,* 469.) *Lothian* v. *Henderson,* (3 *Bos. & Pul.* 520.) *Gomery* v. *Bond,* (3 *Maule & Sel.* 378.) *Brown* v. *M'Kenlay,* (1 *Esp. Cas. N. P.* 80.) *Cartwright* v. *Rowley,* (2 *Id.* 723.) *Lowry* v. *Bourdieu,* (*Doug.* 452.) *Morris* v. *Turin,* (1 *Dall.* 147.) *Irvine* v. *Hanlen,* (10 *Serg. & Rawle,* 220.)

Mr. *Guillou,* for the defendants in error.

It is well settled that affirmative laws repeal all prior laws *in pari materia.* There was no necessity for an express repealing clause in the act of 1835. The laws were entirely inconsistent. The act of 1835 gave only one dollar per ton; and it is certain that the plaintiff in error acted under it. He was bound by its provisions so long as he retained the office.

The opinion of the Court was delivered by

ROGERS, J.—It seems to be admitted in the argument, that the defendant was the regular inspector of bark, under a commission

(Riley v. Willis.)

dated the 6th of June, 1833, which was not superseded or annulled, until the 28th of March, 1836, when a successor was duly appointed and qualified.   The commission of the 10th of November, 1835, had no effect whatever on the former commission, simply because Riley refused to accept it.   The only fact that remains, is, what fees had the inspector a right to exact, after the passage of the act of the 15th of April, 1835 ?   Is he entitled to the dollar fifty cents per ton, the fees allowed in the former act, or is he confined to one dollar per ton, the measure of compensation in the latter, and existing act ? And this is a question about which it is difficult to raise a doubt. If we give the act a reasonable construction, it is plain, that the legislature deemed one dollar per ton an ample compensation for the services of the inspector, and in that respect have altered the provisions of the former act.   In that aspect, it is of no sort of consequence under which statute the inspector was appointed, as it is competent for the legislature to make such changes as they may think proper, in the fees of office.   If the incumbent was not satisfied with the compensation, he was at liberty to resign ; but until he does so, he must be regulated in his exactions by the fees which the legislature have thought proper to allow.   As the acts are inconsistent with each other, the latter, *quoad hoc*, repeals the former ; for an affirmative statute, is a repeal, by implication, of a precedent affirmative statute, so far as it is contrary thereto : *Leges posteriores priores abrogant.*   It is very improbable that the legislature contemplated a different rate of compensation in different parts of the state, simply because the governor, for very good reasons, had not in one case, and had in another, appointed an inspector under the latter law.   It is for those who maintain this proposition to give very clear and convincing reasons for it.  " The inspector of ground oak bark," (section 155,) " may demand and receive, for inspecting every ton weight of bark, one dollar."   And the 101st section, makes the taking of greater fees than are fixed by the act, a misdemeanor.   It designates the inspector, without reference to the manner or time of his appointment ; and it is clear, that the penal clause must operate upon the inspector, without regard to the time when he receives his appointment.   A statute goes into immediate operation, unless a contrary intention most clearly appears.

There is nothing in the second point.   This cannot, with any propriety, be held a voluntary payment.   When a person in an official capacity extorts money, or charges exhorbitant fees, the action for money had and received will lie, to recover it back.   1 *Esp. D.* 17.  *Campbell* v. *Hall*, (*Cowp.* 204.)  *Miller* v. *Aris*, (3 *Esp. N. P. C.* 231.)   *Irvine* v. *Wilson*, (4 *T. R.* 485.)

Judgment affirmed.